Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| ELVING VISBAL CASTRO; EDMUNDO ROSAY MARCHANY<br><br>Recurrida<br><br>v.<br><br>CONSEJO DE TITULARES Y JUNTA DE DIRECTORES DEL CONDOMINIO TORRE MARSELLA<br><br>Recurrente | KLRA202500003 | REVISIÓN JUDICIAL procedente del Departamento de Asuntos del Consumidor, Oficina de Mayagüez<br><br>Querellas núms.:<br>C-MAY-2024-0005006<br>C-MAY-2024-0005024<br><br>Sobre: Condominio |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 21 de marzo de 2025.

Comparece ante este tribunal apelativo, el Consejo de Titulares del Condominio Torre Marsella (el Consejo de Titulares o la parte recurrente), mediante el recurso de revisión judicial de epígrafe, solicitándonos que revoquemos la *Resolución Sumaria* emitida por el Departamento de Asuntos al Consumidor (en adelante el DACo) el 25 de octubre de 2024, notificada el 29 de octubre siguiente. Mediante este dictamen, el foro administrativo declaró *Ha Lugar* a las querellas consolidadas de los cotitulares en el inmueble, Sr. Elving Visbal Castro y Sr. Edmundo Rosaly Marchany (señor Visbal Castro y señor Rosaly Marchany, en conjunto los recurridos); y en su consecuencia, declaró nula la enmienda al Reglamento del Condominio Torre Marsella que versa sobre la prohibición de alquileres a corto plazo, la cual fue posteriormente inscrita por el Consejo de Titulares.

Por las razones que expondremos a continuación, procede revocar la *Resolución* recurrida.

**I.**

Surge del expediente apelativo que, el **16 de septiembre de 2023,** el Consejo de Titulares celebró una Asamblea Ordinaria para enmendar el Reglamento del Condominio Torre Marsella (Reglamento), complejo que consta de veintiocho (28) apartamentos de uso residencial multifamiliar,[1] ubicado en el Municipio de Cabo Rojo.[2] La redacción de las enmiendas propuestas se presenta a continuación:[3]

> I.   La Junta de Directores del Condominio Torre Marsella le propone a los titulares el enmendar el Artículo 28 del Reglamento Vigente.
> ***Se propone que el Artículo 28 lea como sigue:***
> ---**Artículo 28.** *El Titular en el disfrute y aprovechamiento de su unidad tendrá que dedicarlo obligatoriamente al destino que se le asignó en la escritura matriz, o sea, a fines estrictamente residenciales. Ningún titular, arrendatario u ocupante de una unidad podrá:*
> *---(A) dedicarlo a fines comerciales, profesionales o industriales y deberá ajustar en todo momento su conducta al orden, disciplina, moralidad, decoro y normas de convivencia establecidas por la ley, este reglamento y las buenas costumbres.* **Queda terminantemente prohibido el alquilar el inmueble a corto plazo, o sea, por términos de tres (3) meses o menos. Para efectos de esta disposición, tres (3) meses son 90 días.**
> II.   La Junta recomienda enmendar el inciso (a) del Artículo 38 para que lea como sigue:
> ---a) Se dedicará exclusivamente a fines residenciales prohibiéndose actos que perturben la paz o tranquilidad de los demás Titulares y ocupantes de las unidades.
> **Queda terminantemente prohibido el alquilar el inmueble a corto plazo, o sea, por términos de tres (3) meses o menos. Para efectos de esta disposición, tres (3) meses son 90 días.**
>
> En cuanto al Artículo 38 inciso (g), se propone añadir un inciso 7 que lee como sigue:
>
> **7)** *No se aceptarán arrendamientos que sean por menos de tres (3) meses. Para efectos de esta disposición, tres (3) meses son 90 días.*

(Negrillas, itálico y subrayado en el original)

---

[1] Véase, Apéndice del Recurso, a las págs. 51 y 73. Escritura Número 16 del 1 de junio de 2006 Sobre Régimen de Propiedad Horizontal.
[2] Véase, Apéndice del Recurso, a la pág. 134. Convocatoria Asamblea Ordinaria.
[3] *Íd.*, a las págs. 135-137.

El Acta de la Asamblea Ordinaria 2023,[4] detalla el ejercicio de votación de los asistentes. También, el documento recogió que el señor Visbal Castro y señor Rosaly Marchany presentaron sus objeciones a las enmiendas en sus turnos de argumentación durante la Asamblea. Finalmente, de un total de dieciséis (16) votos presentes, catorce (14) favorecieron las enmiendas, mientras que dos (2) expresaron su rechazo.[5] Según expresado en el Acta, los titulares convocados y ausentes en la Asamblea, serían notificados sobre la votación y tendrían un periodo de treinta (30) días, a partir de la notificación del Acta, para emitir su voto.

Luego del trámite reglamentario correspondiente, el **20 de diciembre de 2023**, el Consejo de Titulares del Condominio Torre Marsella presentó la enmienda al Régimen de Propiedad Horizontal ante el Registro de la Propiedad.[6]

El **29 de enero de 2024**, el señor Visbal Castro presentó su querella ante el DACo.[7] En esta, solicitó a la agencia declarar nula la votación. Este hizo referencia a una Sentencia previa emitida por la agencia. Según indica el recurrido, el dictamen previo determinó que la votación para enmendar la escritura matriz debía ser unánime.[8] También puntualizó que la misma decisión determinó que imponer las condiciones de restricción de alquiler a la propiedad del recurrido resultaba en una violación a su contrato de compraventa celebrado en el 2008 y que, según la querella, ese

---

[4] Véase, Apéndice del Recurso, a las págs. 138-141.

[5] *Íd.*, a la pág. 2. La votación final fue recogida en las Determinaciones de Hechos de la agencia y lee como sigue:

[...] 5. Que las partes estipularon que luego del trámite de contabilizar los votos de los ausentes la votación fue de veinticinco (25) votos a favor y tres (3) en contra. [...]

[6] Véase, Apéndice del Recurso, a las págs. 143-144.

[7] *Íd.*, a las págs. 29-31.

[8] *Íd.*, a las págs. 28 y 30-31. El recurrido mencionó que la Sentencia fue emitida por el Juez Administrativo, Lcdo. Pedro Juan González Rodríguez, el 12 de marzo de 2018.

acuerdo establece que el apartamento puede ser alquilado sin restricción de tiempo.

Por su parte, el **7 de febrero de 2024**, el señor Rosaly Marchany presentó su querella bajo los mismos fundamentos del señor Visbal Castro.[9]

El **13 de agosto de 2024**, el Consejo de Titulares contestó ambas querellas.[10] En síntesis, alegó que las querellas estaban prescritas según la Ley núm. 129 del 16 de agosto de 2020, denominada como la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1291 *et seq*. Indicó que, dicho cuerpo de ley, en su Artículo 65, otorga treinta (30) días para impugnar acciones de la Junta. Así, argumentó que la Asamblea se celebró el **16 de septiembre de 2023**, que el señor Visbal Castro presentó su querella el **29 de enero de 2024** y el señor Rosaly Marchany hizo lo propio el **7 de febrero de 2024**. Es decir, en exceso del término para ello.

El 16 de agosto de 2024, DACo emitió la *Notificación y Orden, Transferencia y Consolidación*.[11] En dicha *Orden*, las querellas fueron consolidadas **por acuerdo de partes** y la vista fue transferida al 21 de octubre de 2024. El identificador alfanumérico prevaleciente fue el C-MAY-2024-0005006.[12]

Luego de la celebración de la vista argumentativa oral de derecho del 21 de octubre de 2024, el **25 de octubre posterior**, el DACo, Oficina Regional de Mayagüez, emitió la *Resolución Sumaria* impugnada,[13] la cual fue archivada en autos el 28 de octubre de 2024 y notificada por correo al día siguiente. En lo pertinente,

---

[9] Véase, Apéndice del Recurso, a las págs. 36-38. El recurrido incluyó el número de caso C-MAY-2017-0000319 como referencia a la decisión previa emitida por la agencia el 12 de marzo de 2018. Véase, también, la *Resolución Sumaria*, Apéndice del Recurso, a las págs. 8-10 y la página 5 del *Alegato en Oposición* presentado por el señor Visbal Castro, en donde identifica la *Resolución* C-MAY-2017-0000319 con fecha emisión el 2 de abril de 2018, y notificación del 3 de abril de 2018.

[10] Véase, Apéndice del Recurso, a las págs. 39-46.

[11] *Íd.*, a las págs. 47-49.

[12] *Íd.*, a las págs. 48 y 49. La copia provista en el expediente no incluye la fecha de archivo del documento ni la firma en su última página.

[13] Véase, Apéndice del Recurso, a las págs. 1-14.

destacamos la redacción final de las enmiendas, según inscritas en la escritura pública y reseñadas en las *Determinaciones de Hechos*:[14]

[…]

7. De la "Escritura Número: Doscientos (200) intitulada "Enmienda al Reglamento del Condominio Torre Marsella", se recoge lo siguiente:
"---Tercero: En Asamblea Extraordinaria celebrada el sábado dieciséis (16) de septiembre de dos mil veintitrés (2023) y la cual comenzó a las siete de la noche (7:00 P.M.), contando con un quorum de dieciséis (16) titulares presentes físicamente o por poder (proxy) se aprobó con votación de catorce (14) votos a favor representativos de un cuarenta y siete punto cuarenta y siete ochenta y siete por ciento (47.4787%) de participación en los elementos comunes generales del inmueble y dos (2) votos en contra representativos de un diez punto setenta y cinco setenta y dos por ciento (10.7562%) de participación en los elementos comunes generales se aprobaron las siguientes enmiendas a ciertas disposiciones del reglamento vigente:

Se aprobó que el Artículo 28 lea como sigue:

Artículo 28:

El Titular en el disfrute y aprovechamiento de su unidad tendrá que dedicarlo obligatoriamente al destino a que se le asignó en la escritura matriz, o sea, a fines estrictamente residenciales.

Ningún titular, arrendatario u ocupante de una unidad podrá:

(A) Dedicarlo a fines comerciales, profesionales o industriales y deberá ajustar en todo momento su conducta al orden, disciplina, decoro y normas de convivencia establecidas por la ley, este reglamento y las buenas costumbres. Queda terminantemente prohibido el alquiler a corto plazo, o sea, por términos de tres (3) meses o menos.

Se aprobó enmendar el inciso (a) del Artículo 38 para que lea como sigue:

(a) Se dedicará exclusivamente a fines residenciales, prohibiéndose actos que perturben la paz o tranquilidad de los demás Titulares y ocupantes de esas unidades.
Queda terminantemente prohibido el alquilar el inmueble a corto plazo, o sea, por términos de tres (3) meses o menos.

Se aprobó enmendar el Artículo 38, inciso (g), para añadir un inciso 7 que lee como sigue:

No se aceptarán arrendamientos que sean por menos de tres (3) meses. Para efectos de esta disposición, tres (3) meses son 90 días...".

[…]

---

[14] Véase, Apéndice del Recurso, a las págs. 3-4. También, véase la escritura pública, a las págs. 130-132.

Entre otras determinaciones de hechos, relevantes a la controversia ante nuestra consideración, figuran las siguientes:[15]

[...]

10. Que en la escritura matriz del condominio Torre Marsella no se establece que las unidades de vivienda del condominio no puedan alquilarse por periodos menores de 90 días, no establece un periodo mínimo para realizar el alquiler de un apartamento.

11. Que sin esa restricción legal fueron adquiridos ambos apartamentos.

12. No hay controversia que el condominio es de fecha anterior a la aprobación de la vigente ley de condominio.

[...]

A base de la evaluación de las referidas determinaciones, el DACo decretó nula la enmienda votada por el Consejo de Titulares por no haberse decidido por unanimidad. Asimismo, la agencia fundamentó su raciocinio en la decisión previamente emitida por otro Juez Administrativo y citada por las recurridos.[16] En esta, se había colegido que, a menos que medie votación unánime, no se puede prohibir a cualquier titular alquilar su apartamento por periodos de menos de cierta cantidad de días, ya que dicha prohibición significa una restricción al uso y disfrute de su propiedad. Por lo que, determinó la invalidez de las enmiendas por falta de unanimidad en la votación y dictaminó lo siguiente:

**ORDEN**

**"[...]Se declara HA LUGAR la querella y se declara nula la enmienda que dispone "Queda terminantemente prohibido el alquilar el inmueble a corto plazo, o sea, por términos de tres (3) meses o menos". No tendrá efecto alguno contra los titulares. [...]."**

(Negrillas en el original)

El **18 de noviembre de 2024**, el Consejo de Titulares presentó su *Moción de Reconsideración a Resolución Sumaria*.[17]

---

[15] *Íd.*, a la pág. 4.
[16] Véase, nota al calce número 8.
[17] Véase, Apéndice del Recurso, a las págs. 15-24.

Expusieron que la Ley de Condominios, *infra*, permite al Consejo de Titulares regular el límite de los alquileres a corto plazo. Insisten en que, las enmiendas requieren la votación de dos terceras partes (2/3) de sus titulares, y no el voto unánime, como sostiene la agencia.

Transcurrido el término administrativo establecido en ley, y en ausencia de una contestación por parte de la agencia, la moción se entendió rechazada. Así las cosas, el **2 de enero de 2025**, la recurrente presentó el recurso que nos ocupa y planteó que el DACo incurrió en los siguientes errores:

> PRIMER SEÑALAMIENTO DE ERROR: ERRÓ DACO AL NO DESESTIMAR LAS QUERELLAS CONSOLIDADAS POR ESTAR PRESCRITAS.
>
> SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ DACO AL DECLARAR NULA LA ENMIENDA DEL REGLAMENTO DEL CONDOMINIO TORRE DE MARSELLA QUE PROHÍBE LOS ALQUILERES A CORTO PLAZO POR UN PERIODO DE TRES (3) MESES O MENOS.

El 4 de febrero de 2024,[18] el señor Visbal Castro presentó su *Alegato en Oposición*. En cuanto a la prescripción, invocó la Ley de Condominios y la aplicabilidad del término de dos (2) años para impugnar acciones cometidas por el Consejo de Titulares, en vez del periodo prescriptivo de treinta (30) días para refutar otras acciones. Entre otros asuntos, también expuso que se debe sostener la determinación de la agencia a falta de la votación por unanimidad sobre las enmiendas propuestas.

El 18 de febrero posterior, el señor Rosaly Marchany presentó su *Oposición a la Revisión*. En síntesis, se unió a los planteamientos del señor Visbal Castro sobre la falta de votación unánime requerida para la aprobación y presentación de las enmiendas en disputa.

Analizados los escritos de las partes y el expediente; así como estudiado el derecho aplicable, procedemos a resolver.

---

[18] El escrito está suscrito con fecha del 30 de enero de 2025, pero con sello de presentación ante este Tribunal de Apelaciones el 4 de febrero de 2025.

**II.**

**Revisión judicial de las decisiones administrativas**

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Buxó Santiago v. ELA et. als.*, 2024 TSPR 130, 215 DPR ___ (2024). *Specialty et al. II.*, 179 DPR 923, 940 (2010).[19]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder cuando: (1) la misma no esté basada en evidencia sustancial; (2) la agencia erró en la aplicación o interpretación de las leyes y el reglamento; (3) su actuación resulte ser una arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra*, a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca

---

[19] Véanse, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003); *Transp. Sonell v. Jta. Subastas ACT*, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 2024 TSPR 70, 214 DPR ___ (2024).

suficiente evidencia para derrotarla. *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias,* 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota,* 163 DPR 716, 728 (2005). En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra.* Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota,* supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea

por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Hernández, Álvarez v. Centro Unido,* 168 DPR 592, 616 (2006), citando a *Otero v. Toyota,* supra.

**Resolución Sumaria**

La sección 3.7 de la LPAU, 3 LPRA sec. 9647, establece que, si la agencia determina que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias. Esta determinación se hará, previa solicitud de parte, y luego de un análisis de los documentos que obran en el expediente y en la moción de solicitud de resolución sumaria y su oposición correspondiente.

La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que: (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición, una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede. *Íd.*

Del mismo modo, el Reglamento Núm. 8034 del 14 de junio de 2011, Reglamento de Procedimientos Administrativos del Departamento de Asuntos al Consumidor, en su Regla 11, Faculta al DACo a resolver de manera sumaria en aquellos casos donde no exista controversia real de hechos.

**La Prescripción**

Bajo nuestro sistema de derecho, la prescripción es materia de derecho sustantivo y se rige por las disposiciones del Código Civil o la legislación especial aplicable. *García Pérez v. Corp. Serv. Mujer,* 174 DPR 138, 147 (2008). Esta es una forma de extinción de las

obligaciones y acarrea consigo la desestimación de cualquier acción que sea presentada fuera del término provisto para ello.[20] *Maldonado v. Russe*, 153 DPR 342, 347 (2001). Su propósito es asegurar la estabilidad de la propiedad y la certidumbre de los demás derechos. *Agulló v. ASERCO,* 104 DPR 244, 248 (1975). Su innegable necesidad y valor responden a una presunción legal de abandono derivada del hecho del transcurso de un tiempo determinado sin reclamar un derecho. *García Pérez v. Corp. Serv. Mujer,* supra, a la pág. 147; *Santos de García v. Banco Popular,* 172 DPR 759, 766 (2007); *Galib Frangie v. El Vocero de P.R.,* 138 DPR 560, 566 (1995); *Eisele v. Orcasitas,* 85 DPR 89, 93 (1962). Por lo cual, "el propósito medular de todo término prescriptivo es garantizar la estabilidad económica y social de las relaciones bilaterales, al estimular el rápido reclamo del cumplimiento de las obligaciones contractuales o legales y procurar así la tranquilidad del obligado contra la eterna pendencia de una acción civil en su contra". *Cintrón v. E.L.A.,* 127 DPR 582, 588 (1990).

De otra parte, nuestro más alto foro judicial, reconoció que -antiguamente- ni las agencias administrativas ni los tribunales le prestaban importancia a la prescripción en casos de impugnación de acciones al amparo de las pasadas leyes de condominio. Antes, imperaba la figura de la incuria ante las agencias administrativas. Sin embargo, desde el 2003 en adelante, mediante legislación se han establecido términos prescriptivos ante los foros administrativos en este tipo de casos. *Pereira Suárez v. Jta. Dir Cond.,* 182 DPR 485 (2011).

---

[20] A pesar de que la prescripción es materia sustantiva, cabe señalar también que la prescripción es una defensa afirmativa que debe plantearse de forma expresa y oportuna, o de lo contrario, se entiende renunciada. Regla 6.3 de las Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 6.3.

**La Ley núm. 129-2020**

El 16 de agosto de 2020, la Asamblea Legislativa aprobó la Ley núm. 129 del 16 de agosto de 2020, denominada como la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq.*[21] La misma se aprobó con el fin de actualizar las normas que rigen la convivencia en los condominios y atemperar la norma estatutaria a cambios sociológicos experimentados en el país. *Exposición de Motivos* de la Ley núm. 129-2020.

Como parte de las nuevas prácticas en los arrendamientos, el Artículo 3 (g) de la precitada ley, 31 LPRA sec. 1921a, contempla la siguiente definición:

> [...]
>
> g) Arrendamiento a corto plazo — Se entenderá cualquier arrendamiento por un término menor a noventa (90) días consecutivos.
>
> [...]

Así también, la Ley de Condominios, *supra*, preceptúa en el Artículo 40 (g), 31 LPRA sec. 1922*l*, la siguiente regulación:

> Artículo 40. — Arrendamientos de los Apartamentos a Corto Plazo
>
> **Salvo que en la escritura matriz o en el reglamento, exista una prohibición expresa o que establezca un término mínimo de arrendamiento, no se podrá prohibir el arrendamiento de los apartamentos a corto plazo en los inmuebles sometidos al Régimen de Propiedad Horizontal.**
>
> **En el Reglamento se podrá regular la forma en que se llevarán a cabo los arrendamientos de los apartamentos a corto plazo, incluyendo requerir un término mínimo de noches a arrendar y podrá imponer una cuota mensual especial, la cual no podrá ser mayor a la cuota de mantenimiento, a los titulares que arrienden su apartamento a corto plazo.**
>
> El Administrador, informará al Centro de Recaudación de Ingresos Municipales anualmente las propiedades sujetas a contratos de arrendamiento a corto plazo. (Énfasis nuestro)

Así, también, en su Artículo 13, 31 LPRA sec. 1921l, sobre la

---

[21] Este estatuto derogó la Ley núm. 104 de 23 de junio de 1958 conocida como la "Ley de Condominios".

obligación de insertar el reglamento a la escritura, la precitada ley establece que:

> La administración de todo inmueble constituido en propiedad horizontal se regirá por lo dispuesto en esta Ley, y además por un reglamento que deberá insertarse en la escritura de su constitución, o que se agregará a dicha escritura. Copia certificada de dicha escritura y del reglamento, y de toda enmienda a los mismos, deberá quedar archivada en el Registro de la Propiedad.
>
> [...]

Por otro lado, el Artículo 65 de la Ley núm. 129-2020, 31 LPRA sec. 1923j, regula las *Impugnaciones de Acciones u Omisiones de la Junta de Directores, Administrador Interino y Acuerdos y Determinaciones del Consejo* y lee de la siguiente manera:

> **Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador, así como los acuerdos del Consejo de Titulares** podrán ser **impugnados por los titulares** en los siguientes supuestos:
>
> a) **cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;**
>
> b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>
> c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.
> [...]
>
> Los titulares que sean dueños de apartamentos en condominios que sean dedicados exclusivamente a uso comercial, tendrán que presentar la impugnación ante el Tribunal de Primera Instancia, el cual tendrá jurisdicción primaria y exclusiva. **En el caso de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador.**
>
> **Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.**
>
> **En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares,**

**constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años. El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de esta Ley.** (Énfasis nuestro)

En torno a los reglamentos que rigen los inmuebles y apartamentos sujetos a la Ley de Condominios, *supra,* en el Artículo 14, 31 LPRA sec. 1921m, se dispone lo siguiente:

Artículo 14. — Contenido del Reglamento

El reglamento podrá contener todas aquellas normas y reglas en torno al uso del inmueble y sus apartamentos, ejercicios de derechos, instalaciones y servicios, gastos, administración y gobierno, seguros, conservación y reparaciones, que no contravengan las disposiciones de esta Ley.

[...]

**En cualquier momento**, el titular único del inmueble o, si hubiere más de uno (1), **dos terceras (2/3) de todos los titulares, que a su vez, reúnan dos terceras (2/3) partes de las participaciones en las áreas comunes, podrán modificar el reglamento, pero siempre deberá quedar regulado cada extremo de los comprendidos en este Artículo. La modificación tendrá que constar en escritura pública y, además, se presentará para su inscripción en el registro particular de la finca matriz, dejándose archivada en el Registro de la Propiedad copia certificada, según dispone el Artículo 13 de esta Ley.**

**La modificación vinculará a todos los titulares desde que se haya obtenido el voto afirmativo de las dos terceras (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes o desde que haya transcurrido el plazo de treinta (30) días dispuesto en el Artículo 52 (c) de esta Ley sin que hubiera oposición de más de una tercera (1/3) parte de los titulares, que a su vez, reúnan una tercera (1/3) parte de las participaciones en las áreas comunes.**

[. . .] (Énfasis nuestro)

**III.**

En esencia, en su primer señalamiento de error, la parte recurrente expuso que erró el DACo al no desestimar por prescripción las querellas que motivan el caso de epígrafe. Tras un análisis minucioso de los hechos y el derecho aplicable, adelantamos que no le asiste la razón. Veamos.

De entrada, entendemos menester señalar que el estatuto regente es diáfano en establecer que, cuando se trate de **una acción de impugnación sobre acuerdos, acciones o determinaciones del Consejo de Titulares en contravención con la Ley**, escritura matriz o reglamento, **el término prescriptivo será de dos (2) años**. Art. 65, Ley 129-2020, *supra*. Este término prescriptivo comenzará a correr a partir de la toma de la decisión si el querellante estuvo presente, o a partir de la notificación si su ausencia estuvo justificada.

En el caso ante nuestra consideración, la parte recurrente aduce que había prescrito la acción, toda vez que la ley regente otorga treinta (30) días para impugnar acciones de la Junta. Así pues, señaló, que los recurridos instaron sus respectivas querellas en exceso del referido plazo a computarse desde que la Asamblea se celebró el **16 de septiembre de 2023**.

Este argumento no nos convence. La realidad es que los recurridos (querellantes) impugnaron ante el DACo la determinación del Consejo de Titulares de enmendar el Reglamento y la escritura matriz del Condominio para establecer una prohibición a los alquileres a corto plazo lo que, a su entender, constituye una alegada violación a la Ley núm. 129-2020. Por lo que, al tratarse de **una objeción relacionada con la decisión tomada por el Consejo de Titulares supuestamente en contravención con la Ley,** no cabe duda de que el término prescriptivo aplicable es de dos (2) años y, en consecuencia, el DACo estaba facultado para atender los reclamos ante su consideración.

Enfatizamos, además que, debido a lo reciente de la Ley núm. 129-2020, el Artículo 65 y el término prescriptivo, nuestro más alto foro no ha tenido la oportunidad de expresarse. Sin embargo, señalamos que dicho artículo relacionado a la prescripción se mantuvo igual al Artículo 42 de la Ley núm. 103-2003, derogada, en

donde el Tribunal Supremo de Puerto Rico sí tuvo la oportunidad de expresarse y establecer que:

> Queda claro que allí [en *Pereira Suárez v. Jta. Dir. Cond.*, supra] distinguimos que el periodo prescriptivo para impugnar las acciones, acuerdos u omisiones no aplica cuando se trata de actos tajantemente prohibidos por la Ley de Condominios. A esos efectos, aclaramos que "los actos contrarios a la ley son nulos y se podrán cuestionar en cualquier momento. Por el contrario, **las impugnaciones de las acciones o acuerdos que la ley faculta a los titulares a realizar, se tendrán que disputar dentro del término ordenado**". *Consejo de Titulares v. Ramos Vázquez,* 186 DPR 311, 331 (2012) (citando a *Pereira Suárez v. Jta. Dir. Cond.*, supra, pág. 504).
>
> Así también, **enfatizamos que ese periodo de prescripción no cerraría las puertas a la posibilidad de instar acciones de impugnación. Más bien, aclaramos que estas debían ser presentadas en el término de dos años**. De esa forma, concluimos que las acciones que realizó el Presidente de la Junta de Directores del Condominio, al no estar prohibidas en la ley, estaban sometidas al periodo de impugnación de dos años. *Consejo de Titulares v. Ramos Vázquez,* supra, pág. 331. [Énfasis nuestro]

Así también, el tratadista Michel J. Godreau, nos aclara, precisamente, que es norma reiterada por los tribunales que en el caso del término de treinta (30) días, aplica exclusivamente para las determinaciones o acuerdos que el titular considere prejudiciales. No obstante, cuando se levanta una impugnación alegando violación a la ley, reglamento o escritura matriz, el término prescriptivo es el de dos (2) años.

> [. . .]
>
> En estos casos particulares no existe la restricción de los 30 días que la ley dispone para apelar las determinaciones o acuerdos que el titular considere prejudiciales. Así lo habría resuelto el Supremo desde 1988 en *Ortiz Álvarez (DACo) v. Condominio Martí* [121 DPR 807 (1988)]
> [. . .]
>
> El tribunal adoptó entonces la interpretación del DACo en el sentido de que el límite de treinta días aplica "exclusivamente para la acción de impugnación de acuerdos y determinación que el titular estimase gravemente perjudiciales para él o para la comunidad de titulares. Las demás acciones -continúa el Tribunal citando al DACo- **las fundadas en que los actos de los órganos del gobierno del Condominio son contrarios a la ley,** a la escritura de su Constitución o a su reglamento no están sujetas para su ejercicio a ese breve plazo. El Artículo 42 [ahora derogado] estableció

el término prescriptivo de dos años para este último tipo de acción [. . .].[22]

Respecto al segundo señalamiento de error, la parte recurrente nos planteó que erró DACo al declarar nula la enmienda al Reglamento que prohíbe los alquileres a corto plazo por el término mínimo de tres (3) meses. Le asiste la razón en sus planteamientos.

Es harto conocido que la Ley núm. 129-2020, *supra*, dispone que no se podrá prohibir el alquiler a corto plazo, **a menos, que se prohíba expresamente o que se establezca un mínimo de arrendamiento en la escritura matriz o el reglamento**. Así también, esta faculta al Consejo de Titulares a enmendar su Reglamento y la Escritura Matriz -en cualquier momento- con el voto de 2/3 partes de titulares que, a su vez, reúnan 2/3 partes de los espacios comunes. En este sentido, y como ha expresado este tribunal a través de un panel hermano,[23] no cabe duda de que la ley le concede los poderes al Consejo de Titulares para establecer, enmendar, modificar o eliminar este tipo de disposiciones.

Relativo a la potestad del Consejo de Titulares, la *Exposición de Motivos* de la Ley núm. 129-2020, lee de la siguiente forma:

> Los Consejos de Titulares **tendrán la capacidad, en cualquier momento, de realizar enmiendas a su escritura matriz o al reglamento para establecer, modificar o eliminar la prohibición a los arrendamientos a corto plazo que esta Ley le permite adoptar**. [Énfasis nuestro]

Del mismo modo, en el Artículo 14 del estatuto, 31 LPRA sec. 1921m, se reafirma la intención del legislador citada de la *Exposición de Motivos*, al establecer que:

> **En cualquier momento, el titular único del inmueble o, si hubiere más de uno (1), dos terceras (2/3) de todos los titulares que, a su vez, reúnan dos terceras (2/3) partes de las participaciones en las áreas comunes, podrán modificar el reglamento** (Énfasis nuestro)
>
> [. . .]

---

[22] M.J. Godreau, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, San Juan, Ed. Dictum, 2019, pág. 259.

[23] *Montes Arraiza v. Consejo de Titulares y Junta de Directores Cond. Playamar*, KLRA202200362.

> La modificación tendrá que constar en escritura pública y, además, se presentará para su inscripción en el registro particular de la finca matriz, dejándose archivada en el Registro de la Propiedad copia certificada, según dispone el Artículo 13 de esta Ley.

En el caso ante nuestra consideración, el Consejo de Titulares citó a los Titulares a una Asamblea para presentarles la enmienda al Reglamento, antes citada, y como especificamos, se alcanzaron los votos requeridos en ley para su aprobación. En este punto, recordemos que la votación final de los titulares fue de veinticinco (25) votos a favor y tres (3) en contra, lo que claramente constituye una votación mayor a la requerida de dos terceras partes (2/3). Eventualmente, se realizó su inscripción en el Registro de la Propiedad.

En virtud del derecho precedente, resulta forzoso colegir que la legislación que gobierna los condominios en Puerto Rico, autoriza al Consejo de Titulares a enmendar el reglamento con la cantidad de votos requeridos para prohibir o limitar los arrendamientos a corto plazo y administrar la convivencia de los titulares sometidos al régimen de propiedad horizontal. Lo que vimos se cumplió en la votación final. Por tanto, advertimos que el fundamento utilizado por el foro recurrido relacionado con requerir el voto unánime de los titulares por razón de que prohibir a cualquiera de estos a alquilar su apartamento por periodos de menos de cierta cantidad de días, implica una restricción al uso y disfrute de su propiedad no encuentra apoyo en la legislación aplicable, ampliamente explicada. Más bien, reiteramos que este raciocinio contraviene la facultad expresamente otorgada por la Ley núm. 129-2020 al Consejo de Titulares en este asunto.

En fin, ultimamos que las querellas instadas por los recurridos ante el foro administrativo no estaban prescritas y la enmienda propuesta, votada y validada por la mayoría absoluta de los titulares, e inscrita por el Consejo de Titulares es válida al

cumplir con los criterios y exigencias dispuestos en la Ley núm. 129-2020.

**IV.**

Por los fundamentos antes expuestos, revocamos el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones